IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| NOEL I. REYES-MUÑOZ; OLGA I. RAMOS-CARRASQUILLO<br><br>Plaintiffs,<br><br>v.<br><br>PUERTO RICO AQUEDUCT AND SEWER AUTHORITY; ENVIRONMENTAL PROTECTION AGENCY,<br><br>Defendants | CIV. NO.: 19-2131 (SCC) |

## OMNIBUS OPINION AND ORDER

Plaintiffs Noel I. Reyes-Muñoz and Olga I. Ramos-Carrasquillo (collectively, "Plaintiffs"), filed a citizen suit (the "Complaint" or "Citizen Suit") under the citizen enforcement provision of the Federal Water Pollution Prevention and Control Act ("CWA"), 33 U.S.C. § 1365(a), against the Puerto Rico Aqueduct and Sewer Authority ("Defendant PRASA" or "PRASA") and the United States Environmental Protection Agency ("Defendant EPA" or "EPA") (collectively,

"Defendants"). Docket No. 1. Plaintiffs also advanced Puerto Rico law claims for nuisance and riparian rights. *Id.*

In the wake of Plaintiffs' Complaint, Defendants separately moved for its dismissal. As such, there are two dispositive motions pending before the Court. First, is Defendant PRASA's Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ("Rules 12(b)(1) and 12(b)(6)"), respectively, *see* Docket No. 11, which Plaintiffs opposed, *see* Docket No. 17. Second, is Defendant EPA's Motion to Dismiss for Lack of Jurisdiction under Rule 12(b)(1), *see* Docket No. 18, which was opposed by Plaintiffs, *see* Docket No. 23. Defendant EPA filed a reply, *see* Docket No. 27, after having moved for prior leave to do so, *see* Docket No. 26.

For the reasons set forth below, Defendant PRASA's Motion to Dismiss at Docket Number 11 is DENIED while Defendant EPA's Motion to Dismiss at Docket Number 18 is GRANTED.

## I.  Factual and Procedural Background

On August 19, 2019, Plaintiffs—who are both residents of
Caguas, Puerto Rico—notified (the "Notice")[1] Defendants
that they had identified certain activity that violated the CWA
near a second property that they own in the municipality of
Cidra (the "Property"). Docket No. 1 at ¶¶ 1-2 and 8-11; *see
also* Docket No. 1-1. Specifically, in that Notice, Plaintiffs
informed Defendants that they intended to file a suit against
PRASA for violations of the CWA because a sewage manhole,
located at Global Positioning System ("GPS") 18.1781955, -
66.15260600 (the "Manhole"), was discharging raw sewage.
Docket No. 1 at ¶¶ 12 and 26; *see also* Docket No. 1-1. Plaintiffs
allege that, when these discharges occur, the raw sewage

---

[1] This "Notice" refers to the 60-day notice required under § 1365(b). *See* 33
U.S.C. § 1365(b)(1)-(2) (stating that "[n]o action may be commenced— (1)
under subsection (a)(1) of this section— (A) prior to sixty days after the
plaintiff has given notice of the alleged violation (i) to the Administrator,
(ii) to the State in which the alleged violation occurs, and (iii) to any
alleged violator of the standard, limitation, or order or . . . (2) under
subsection (a)(2) of this section prior to sixty days after the plaintiff has
given notice of such action to the Administrator [of the EPA].").

spills over to the land adjacent to the Property and into the Cidra Lake. Docket No. 1 at ¶ 12; *see also* Docket No. 1-1.

In the Notice, Plaintiffs informed that the discharges had been previously reported to Defendants to no avail.[2] Docket No. 1 at 13; *see also* Docket No. 1-1 at 2-6. Plaintiffs added that their suit would also be directed at Defendant EPA, for it had failed to commence enforcement actions against PRASA given the aforementioned violations or to otherwise diligently prosecute any consent decree that may apply to their allegations. Docket No. 1 at ¶¶ 32 and 35; *see also* Docket No. 1-1 at 2 and 5.

---

[2] In their Notice, Plaintiffs allege that the violations date back to 2015. Docket No. 1-1 at 2. However, the Court notes that only the specific dates of the incidents that occurred in 2019, as of the time that the Notice was sent, were identified in both the Notice and the Complaint. Docket No. 1 at ¶ 13; *see also* Docket No. 1-1 at 2. The 2019 raw sewage discharges into the Cidra Lake reportedly occurred on February 12, 2019, February 14, 2019, March 28, 2019, May 14, 2019, June 10, 2019, June 14, 2019 and August 2, 2019. *Id.*

On December 13, 2019, Plaintiffs filed the instant Complaint. Docket No. 1. There, they rehashed the allegations set forth in their Notice and added that while Defendants failed to respond to the Notice, *see* Docket No. 1 ¶ 31, at some point in August 2018—prior to sending the Notice to the EPA and PRASA—Defendant EPA informed them that there was nothing that it could do about the discharges and that there was no law that would allow it to begin any enforcement action against PRASA to address their concerns. *Id.* at ¶ 34.

Although Defendant PRASA reportedly lacks a permit that would allow it to discharge raw sewage from the Manhole and notwithstanding the Notice, Plaintiffs contend that the discharges are a continuing problem. *Id.* at ¶¶ 14, 28, 36. According to Plaintiffs, the discharges cause foul odors which preclude them from fully enjoying the Property, have diminished the value of the Property, and pose a threat to their health. *Id.* at ¶¶ 17-26.

## II. Analysis

### A. Defendant PRASA's Motion to Dismiss

#### a. Standard of Review

In its Motion to Dismiss, Defendant PRASA argues that, since it entered into a consent decree in 2016 (the "2016 Consent Decreet")[3] with the EPA to address, *inter alia,* the issues raised by Plaintiffs, the CWA's "diligent prosecution bar" strips this Court of jurisdiction to entertain Plaintiffs' Complaint. *See* Docket No. 11. In *Cebollero-Bertran v. Puerto Rico Aqueduct and Sewer Authority,* 4 F.4th 63, 72 (1st Cir. 2021), the First Circuit held that "the CWA's diligent prosecution bar is a mandatory claims-processing rule that does not implicate subject matter jurisdiction." As such, the Court will

---

[3] Two things are worth acknowledging here. First, the Court takes judicial notice of the 2016 Consent Decree for it is a public filing which can be found in the following case docket: *United States v. PRASA,* Civil No. 3:15-cv-02283 (D.P.R. 2015). Second, in its Motion to Dismiss, Defendant PRASA identifies the consent decree as the 2015 Consent Decree. However, because the same was entered on May 23, 2016, throughout this Omnibus Opinion and Order, the Court will refer to it as the 2016 Consent Decree.

employ the standard of review corresponding to a motion filed pursuant to Rule 12(b)(6) to analyze PRASA's Motion to Dismiss.

Federal Rule of Civil Procedure 8(a)(2) serves as the Court's starting point. That rule states that a complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). And when considering a Rule 12(b)(6) motion, the Court must determine whether plaintiff's complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To make such a determination, the Court embarks on a two-step analysis. *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). This analysis is a context-specific task that relies on the Court's "judicial experience and common sense." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). While at this stage the Court cannot consider extrinsic evidence, the Court is allowed to "augment these facts and inferences with data points gleaned from documents incorporated by reference into the

complaint, matters of public record, and facts susceptible to judicial notice." *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011).

First, while the Court is called to accept—in this case, Plaintiffs—well pleaded allegations as true, such a mandate does not mean that the Court is forever destined to do so, for "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not constitute well pleaded allegations under the Rule 12(b)(6) framework. *Iqbal*, 556 U.S. at 678. Therefore, the Court must identify and disregard conclusory factual allegations because it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal citations and quotations omitted).

Second, the Court examines whether the factual allegations—devoid of legal conclusions—allow "the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* That is, in order to survive such motion, Plaintiffs must have set forth allegations that "nudge [their] claims across the line from conceivable to

plausible." *Twombly*, 550 U.S. at 570.

### b. The CWA's Diligent Prosecution Bar

In its Motion to Dismiss, Defendant PRASA contends that the CWA's diligent prosecution bar forecloses Plaintiffs' Complaint. Docket No. 11. The CWA's diligent prosecution bar precludes the filing of a citizen suit pursuant to § 1365(a) if the EPA or a state "has commenced and is diligently prosecuting a civil or criminal action in a court of the United States . . ." 33 U.S.C. § 1365(b)(1)(B).  Meaning that, for Plaintiffs' Complaint to move forward, Plaintiffs must have alleged that the EPA, or a state has not commenced a civil or criminal action "analogous" to Plaintiffs' Complaint or that such an action already commenced but is not being diligently prosecuted. *Cebollero-Bertran*, 4 F.4th at 74 (citing *N. & S. Rivers Watershed Ass'n, Inc. v. Town of Scituate*, 949 F.2d 552, 557 (1st Cir. 1991)).

Here, Defendant PRASA latches on to the 2016 Consent Decree to argue that the diligent prosecution bar applies. Defendant PRASA reasons that the 2016 Consent Decree

shows that an action was filed by the EPA which addresses Plaintiffs' claims and is being diligently prosecuted. Docket No. 11 at pgs. 2-3. Further, Defendant PRASA sustains that the Manhole "is associated with a PRASA pump station known as Treasure Valley [Pump Station],[4] which in turn transmits the collected wastewater to PRASA's Cayey Wastewater Treatment Plant ("Cayey WWTP")." *Id.* at pg. 2. Defendant PRASA further informs that "[t]he Treasure Valley [PS] and the [wastewater collection system][5] are portions of the Cayey WWTP and are covered by the [2016] Consent Decree." *Id.* Defendant PRASA therefore stresses that, not only was an action commenced by the EPA against PRASA which resulted in the entry of the 2016 Consent Decree, but that the same is being diligently prosecuted, for in light of its

---

[4] Throughout this Omnibus Opinion and Order the Court will refer to the Treasure Valley Pump Station as the "Treasure Valley PS".

[5] Defendant PRASA acknowledged that the Manhole was part of its wastewater collection system. *See* Docket No. 11 at pg. 2.

entry, PRASA has taken—and will continue to take—specific steps to address and correct the issues raised by Plaintiffs. *Id.* at pgs. 2-3 and 10-11.

Plaintiffs in turn oppose[6] Defendant PRASA's Motion to Dismiss and argue that the diligent prosecution bar does not apply. Docket No. 17. In support of this contention, Plaintiffs aver that the EPA has not commenced an action addressing their concerns because the 2016 Consent Decree does not tackle the specific violations set forth in their Complaint. *Id.* at pg. 19.[7] Plaintiffs also argue that even if the Manhole and area in question are included in the 2016 Consent Decree, Defendant PRASA's inaction regarding their claims and Defendant EPA's failure to ensure Defendant PRASA's

---

[6] The Court acknowledges that Plaintiffs requested that their Opposition to Defendant PRASA's Motion to Dismiss be considered a Motion for Partial Summary Judgment under Federal Rule of Civil Procedure 56. Docket No. 17 at pg. 2. The Court declines Plaintiffs' invitation. We find that there is no need for such conversion and will therefore adhere to the strictures of Rule 12(b)(6).

[7] *See also* Docket No. 1 at ¶¶ 29-30.

compliance with the 2016 Consent Decree, denote that this matter is not being diligently prosecuted. *Id.* at pgs. 11-19.[8]

The Court begins its analysis by discussing Plaintiffs' claim that the 2016 Consent Decree does not refer to the specific violations laid out in their Complaint. In *Cebollero-Bertran*, the First Circuit noted that "[t]he [2016] Consent Decree need not single out the specific locations [Plaintiffs] state are the sources of the unlawful discharge." 4 F.4th at 74. Such specificity is not required if the "unlawful discharges are within the ambit of [the 2016 Consent Decree's] causes of action." *Id.* The Court finds that such is the case here.

The 2016 Consent Decree is broad in scope. The aforesaid calls on PRASA to, *inter alia,* "bring its [water treatment plants] and [wastewater treatment plants] facilities into compliance with its [National Pollutant Discharge

---

[8] *See also* Docket No. 1 at ¶¶ 31-32 and 35.

Elimination System][9] permits and the CWA[10] on a designated

---

[9] For ease of reference, and because it is the acronym assigned to it, throughout this Omnibus Opinion and Order, the Court will refer to the "National Pollutant Discharge Elimination System" as "NPDES".

[10] The Court adds that, in the "Background" section of the 2016 Consent Decree, it is specified that the EPA's suit against PRASA—which resulted in said decree—alleged that PRASA had:

> discharged pollutants without a NPDES Permit authorizing such discharge in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a); discharged pollutants in excess of the effluent limitations contained in PRASA's NPDES Permits for its WTPs and WWTPs in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a); failed to meet operation and maintenance provisions of the applicable NPDES Permits for its WTPs, WWTPs, including the Puerto Nuevo Regional WWTP Permit as required by 40 CFR § 122.41(e) and in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a); and failed to report discharges as required by the applicable NPDES permits. EPA further alleges that the Complaint states claims upon which relief may be granted against PRASA under Sections 301(a), 309, and 402 of the CWA, 33 U.S.C. §§ 1311, 1319, and 1342.

*See United States v. PRASA,* Civil No. 3:15-cv-2283, Docket No. 10 at pgs. 8-9.

The "Objectives" section of the 2016 Consent Decree added, *inter alia,* that:

timeline. In furtherance of this goal, it requires PRASA to conduct studies of its sewers and perform necessary repairs and construction." *Id.* at pg. 68. Plaintiffs' allegations regarding PRASA's unlawful discharges, mirror the issues addressed in the 2016 Consent Decree.[11] And, in their

> [i]t is the express purpose of the United States [on behalf of the EPA] and PRASA in entering into this Consent Decree to further the objectives of the CWA, as enunciated at Section 101, 33 U.S.C. § 1251, to eliminate unauthorized discharges, to address NPDES Permit effluent limitation exceedances, implement proper operation and maintenance at the Facilities, and to supersede certain Prior Consent Decrees to the extent and in the manner set forth in this Consent Decree. All plans, reports, construction, remedial measures, and other obligations in this Consent Decree or resulting from the activities required by this Consent Decree shall have the objective of furthering PRASA's ability to come into and remain in full compliance with the CWA, and with the terms and conditions of its NPEDS Permits.

*Id.* at pgs. 11-12.

The aforementioned objectives of the 2016 Consent Decree track Plaintiffs' claims as noted in their Complaint and Notice.

[11] *See also supra* note 10.

Opposition to Defendant PRASA's Motion to Dismiss, Plaintiffs do not reject Defendant PRASA's assertion that the Manhole is "associated" to the Treasure Valley PS and Cayey WWTP which are areas covered by the 2016 Consent Decree.[12] This shows that, contrary to Plaintiffs' argument that the 2016 Consent Decree is inapplicable to their claims, the same does constitute an "analogous action". The Court therefore shifts gears to analyze whether the 2016 Consent Decree is being diligently prosecuted.

Defendant PRASA's assertion that the 2016 Consent Decree allows for the automatic application of the CWA's diligent prosecution bar misfires here. The *Cebollero-Bertran* court clarified that while a consent decree represents a step in

---

[12] In their Opposition to Defendant PRASA's Motion to Dismiss, Plaintiffs acknowledge that "[t]he [2016] Consent Decree, however, does refer to other remedies and enforcement actions against discharges of pollutants occurring right next to the Cidra Lake reservoir, that is, right next from the GPS coordinates provided to the defendant." *See* Docket No. 17 at ¶ 9 and pg. 14 (stating that "Plaintiffs also alleged that [the 2016] Consent Decree refers to other remedies and enforcement against discharges of pollutants occurring on the Cidra Lake from the GPS coordinates provided to the defendant related to the sewer spillage.").

the right direction, it is not a "cure-all", for further action—in addition to the entry of the consent decree—is required such that said document comes to life and serves its purpose, in this case: to implement corrective actions to right PRASA's failure to abide by the CWA. 4 F.4th at 74-75.

Plaintiffs' Complaint is clear as to the reported lack of diligent prosecution regarding their claims.  Notwithstanding the fact that considerable time has elapsed since the entry of the 2016 Consent Decree, according to Plaintiffs, no corrective action has been undertaken by either of the Defendants even after the Notice was sent, as such, the violations remain on-going, and the discharges are affecting the Property and pose a threat to Plaintiffs' health. *See* Docket No. 1 at ¶¶ 13, 14, 17-24, 31, 33-34 and 36. Most fundamentally, Plaintiffs' Complaint underscores that the EPA has not been diligently prosecuting any consent decree that may apply to Plaintiffs claims. *Id.* at ¶ 35.

Indeed, in its Motion to Dismiss, Defendant PRASA argues that it has undertaken the following corrective

measures to address Plaintiffs' concerns: (1) "[i]nstalled at
Treasure Valley [PS] a Mission Control monitoring device to
track pump status, pit level and Emergency Generator Unit
that includes an alert system via e-mail and text; [(2)]
performed general repairs (pumps, generators, etc.) and [(3)]
visit[ed] daily to check pump station operation." Docket No.
11 at pgs. 10-11. Defendant PRASA also adds that it will
"develop[] a project to evaluate the portion of the [wastewater
collection system] of the Cayey [wastewater treatment plant]
object of Plaintiffs' Complaint to identify any existing
infiltration/inflow issues to determine any other remedial
measure necessary." *Id.* at 11. But that is neither here nor there
when considering a motion to dismiss under Rule 12(b)(6), for
Defendant PRASA's representations regarding what it has
and will supposedly do to address Plaintiffs' concerns
constitutes extrinsic evidence that is not appropriate for the
Court to consider at this stage. If Defendant PRASA has
carried out—or is slated to carry out—such actions, it may
provide such evidence at the summary judgment stage.

The Court therefore finds that the CWA's diligent prosecution bar is inapplicable here because Plaintiffs have stated a plausible claim that the 2016 Consent Decree is not being diligently prosecuted by the EPA and Defendant PRASA's violations of the CWA are on-going. Accordingly, PRASA's Motion to Dismiss at Docket Number 11 is DENIED.

## B.  Defendant EPA's Motion to Dismiss

### a.  Standard of Review

In its Motion to Dismiss, Defendant EPA raises a sovereign immunity defense to argue that the Court lacks subject matter jurisdiction to entertain Plaintiffs' Complaint. A sovereign immunity defense is analyzed pursuant to Rule 12(b)(1). *Valentín v. Hospital Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001). Rule 12(b)(1) calls upon the Court to "construe the Complaint liberally and treat all well-pleaded facts as true, according the plaintiff the benefit of all reasonable inferences." *Murphy v. United States,* 45 F.3d 520, 522 (1st Cir. 1995). Further, because here Plaintiffs are the party asserting subject matter jurisdiction, they bear the burden of

establishing its existence. *Justiniano v. Soc. Sec. Admin.*, 876
F.3d 14, 21 (1st Cir. 2017).

### b. Sovereign Immunity vis-à-vis 33 U.S.C. § 1365(a)(2)

Defendant EPA relies on the sovereign immunity
generally afforded to federal agencies, in order to argue that
all claims against it should be dismissed. It is a bedrock
principle that "[a]bsent a waiver, sovereign immunity shields
the Federal Government and its agencies from suit." *FDIC v.
Meyer*, 510 U.S. 471, 475 (1994). Section 1365(a)(2) [13]  entails a

---

[13] Plaintiffs did not cite to § 1365(a)(2) in their Complaint or their Notice.
Instead, they cited to § 1365(a)(1), which in turn states that a citizen suit
may be filed:

> against any person (including (i) the United States, and
> (ii) any other governmental instrumentality or agency to
> the extent permitted by the eleventh amendment to the
> Constitution) who is alleged to be in violation of (A) an
> effluent standard or limitation under this chapter or (B)
> an order issued by the Administrator or a State with
> respect to such a standard or limitation[.]

*See* 33 U.S.C. § 1365(a)(1).

limited waiver which opens the door for the EPA to be sued. *See Conservation Law Foundation, Inc. v. Pruitt*, 881 F.3d 24, 28 (1st Cir. 2018) (citing *U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992)). This waiver, however, receives the same treatment that all sovereign immunity waivers are given, namely that, it is to be strictly construed in favor of—in this case—the EPA. *Id.* (citing *McMahon v. United States,* 342 U.S. 25, 27 (1951)).

Section 1365(a)(2) allows a citizen suit to be filed against the EPA[14] if it has failed "to perform any act or duty under

---

This provision generally applies to the alleged polluter, which under the facts of the instant case is PRASA, whereas § 1365(a)(2) applies solely to the EPA. In their Opposition to Defendant EPA's Motion to Dismiss, Plaintiffs invoke § 1365(a)(2) in order to articulate their claims against Defendant EPA. The Court finds that, while Plaintiffs did not specifically cite to § 1365(a)(2) in their Notice or Complaint, after a comprehensive reading of those documents and affording all inferences in their favor, the Court finds that both documents include allegations that would encompass a claim under § 1365(a)(2). Now, whether such allegations survive the sovereign immunity defense raised by Defendant EPA will be the focus of the Court's analysis in this section.

[14] Section 1365(a)(2) authorizes citizen suits against the Administrator of the EPA. While here Plaintiffs sued the EPA, for analysis purposes, the

this chapter which is not discretionary[.]" 33 U.S.C. §
1365(a)(2). Defendant EPA argues that Plaintiffs have not
identified the "non-discretionary" duty that it was supposed
to but did not carry out. Docket No. 18 at pgs. 5-8. Plaintiffs'
response to Defendant EPA's Motion to Dismiss consists of a
three-tiered counterattack whereby they argue that: (1) 33
U.S.C. § 1319(a)(3) ("§ 1319(a)(3)")—which refers to 33 U.S.C.
§ 1319(b) ("§ 1319(b)")—imposes a non-discretionary duty for
the EPA to ensure that PRASA complies with 33 U.S.C. § 1311
("§ 1311"); (2) the EPA waived its sovereign immunity when
it entered into the 2016 Consent Decree; and because of such
waiver, (3) the enforcement of the 2016 Consent Decree is not
a discretionary duty, but rather, a mandatory one. *See* Docket
No. 23. The Court will address each argument in turn.

    As far as Plaintiffs first argument is concerned, in order for
their claims to fall within the confines of the limited waiver
under § 1365(a)(2) of the EPA's sovereign immunity, they

---

Court will treat their claim under § 1365(a)(2) as if it had been brought
against the Administrator of the EPA.

were tasked with showing that the EPA failed to perform a "non-discretionary" duty.  In the Notice and the Complaint, Plaintiffs identify 33 U.S.C. § 1319(a)(1) ("§ 1319(a)(1)") as having imposed a non-discretionary duty on the EPA to take on an enforcement action against PRASA because the discharges that stemmed from the Manhole and ended up in the Cidra Lake violated § 1311.[15] But Plaintiffs do not develop an argument addressing whether § 1319(a)(1) implicates a non-discretionary duty in their Opposition to Defendant EPA's Motion to Dismiss. Instead, they invoke § 1319(a)(3)

---

[15] Section 1311, prohibits, *inter alia*, "the discharge of any pollutant" unless the discharge satisfies the provisions of the CWA which allows, as exceptions, such discharges by way of, for example, the NPDES permit program, as specified under § 1342. *See* 33 U.S.C. § 1311. The CWA defines a "point source" as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." 33 U.S.C. § 1362 (14). It is worth mentioning that the Supreme Court has noted that the CWA "makes plain that a point source need not be the original source of the pollutant; it need only convey the pollutant to 'navigable waters[.]'" *South Fla. Water Mgmt. Dist. v. Miccosukee Tribe,* 541 U.S. 95, 105 (2004).

and argue that, that section impose a non-discretionary duty on the EPA to embark on an enforcement action to enforce § 1311. Docket No. 23 at pgs. 12-24. Given Plaintiffs' reliance on § 1319(a)(3) in their Opposition to Defendant EPA's Motion to Dismiss, and because the Court finds that § 1319(a)(1)[16] does not apply to the facts included in the Notice and the Complaint, the Court will conduct its analysis pursuant to § 1319(a)(3) in order to determine whether that subsection imposes a non-discretionary duty on the EPA.[17]

---

[16] Section 1319(a)(1) states that "[w]henever, on the basis of any information available to him, the Administrator finds that any person is in violation of any condition or limitation which implements section 1311, 1312, 1316, 1317, 1318, 1328 or 1345 of this title **in a permit issued by a State** under an approved permit program under 1342 or 1344 of this title he shall proceed under his authority in paragraph (3) of this subsection or he shall notify the person in alleged violation and such State of such finding[.]" 33 U.S.C. § 1319(a)(1) (emphasis ours). Here, Plaintiffs have not alleged that the permit that was necessary in order for PRASA to continue the discharges from the Manhole was issued by the state.

[17] The Court acknowledges that neither the Notice nor the Complaint cited to § 1319(a)(3), however, akin to our reasoning at *supra* note 13, both the Notice and the Complaint provide sufficient allegations to direct the Court's eyes to § 1319(a)(3). As such, whether § 1319(a)(3) entails a non-discretionary duty will be the focus of the Court's analysis in this section.

In *Heckler v. Chaney,* 470 U.S. 821, 831 (1985), the Supreme Court held that the decision of an agency to prosecute or undertake enforcement action is "generally committed to an agency's absolute discretion." Following the *Heckler* decision, the Circuit Courts that have analyzed whether § 1319(a)(3) entails a discretionary or non-discretionary duty have held that the former holds. *See Sierra Club v. Whitman,* 268 F.3d 898, 902-03 (9th Cir. 2001); *Dubois v. Thomas,* 820 F.2d 943, 946-47 (8th Cir. 1987).[18] Plaintiffs disagree with these cases, for according to them the word "shall", which figures in § 1319(a)(3), imposes a non-discretionary duty on the EPA to undertake enforcement actions. Docket No. 23 at pgs. 12-24. Plaintiffs cite to case law from the Supreme Court in support of the proposition that "shall" is generally indicative of mandatory language. *Id.* at pgs. 15-16 and 23. While that is

---

[18] To date, the First Circuit has yet to pass on this matter. However, at least another district court that belongs to the First Circuit has cited this line of cases favorably. *See Rauseo v. Army Corps of Engineers,* 368 F.Supp.3d 202, 207 (D. Mass. 2019).

true, the Court is persuaded by the discussion in *Sierra Club*
addressing this matter. In *Sierra Club,* the Ninth Circuit also
acknowledged that case law from the Supreme Court has
identified "shall" as a word that generally refers to
mandatory language. 268 F.3d at 904. However, it noted,
pursuant to Supreme Court case law that, "[t]he question
whether 'shall' commands or merely authorizes is
determined by the objectives of the statute." *Id.* (citing *Escoe
v. Zerbst,* 295 U.S. 490, 493 (1993)). The *Sierra Club* court
therefore analyzed the legislative intent behind § 1319 and the
statutory language as a whole—including § 1319(b) which §
1319(a)(3) makes reference to—and determined that
"[n]either the language, nor the structure, nor the legislative
history of [S]ection 1319 shows with any clarity that Congress
intended to make either findings or enforcement actions
mandatory." *Id.* at 905. The Court understands that the
reasoning and ultimate holding in *Sierra Club* is in line with
the general norm that sovereign immunity waivers are to be
strictly construed and not "enlarge[d] . . . beyond what the

language requires." *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685-686 (1983) (quoting *Eastern Transp. Co. v. United States,* 272 U.S. 675, 686 (1927)). As such, the Court agrees with the *Sierra Club* court and maintains that § 1319(a)(3) does not impose a non-discretionary duty directing the EPA to embark on an enforcement action.

The Court next examines Plaintiffs' second and third arguments. Here, the Court need not consider whether the EPA waived its sovereign immunity when it sued PRASA and entered into the 2016 Consent Decree. The reason being that, with this argument, ultimately what Plaintiffs are saying is that the enforcement of the 2016 Consent Decree is a non-discretionary duty that should have been carried out by the EPA; for then, their Citizen Suit would serve as a vehicle to obtain enforcement of the same. This argument falls short for several reasons.

For starters, Plaintiffs were not a party to the 2016 Consent Decree.[19] The general principle remains "that a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefitted by it." *Blue Chips Stamps v. Manor Drug Stores,* 421 U.S. 723, 750 (1975). Moreover, only the issuing court may enforce a consent decree for which it has retained jurisdiction and it so happens that this Court is not the court that issued the 2016 Consent Decree.[20] *See Local No.*

---

[19] The 2016 Consent Decree was entered into by the United States of America, on behalf of the EPA and PRASA, which was identified as a public corporation tasked with administering the aqueduct and sewer system of the Commonwealth of Puerto Rico and considered a "municipality" pursuant to § 1362. *See United States v. PRASA,* Civil No. 3:15-cv-2283, Docket No. 10 at pgs. 5 and 12-13. The Commonwealth of Puerto Rico is a signatory to the 2016 Consent Decree, for its joinder was mandatory under § 1319(e). *Id.*

[20] The 2016 Consent Decree includes a "Retention of Jurisdiction" clause which states the following:

> 135. The Court shall retain jurisdiction of this matter for all purposes, including overseeing implementation of this Consent Decree, until termination of the Consent Decree.

*93, Int'l Ass'n of Firefighters v. City of Cleveland,* 478 U.S. 501, 523-24 n.13 (1986); *In re Pearson,* 990 F.2d 653, 657 (1st Cir. 1993). Bearing this in mind, if Plaintiffs intend to explore whether they have standing to seek the enforcement of the 2016 Consent Decree, they must do so before the issuing court, not before this Court.

Lastly, § 1365(a)(2) clearly states that the non-discretionary duty to be identified by Plaintiffs must fall "under this chapter". A consent decree is hybrid in nature for it "embodies an agreement of the parties and thus in some respects is contractual in nature." *Rufo v. Inmates of the Suffolk Cty. Jail,* 502 U.S. 367, 378 (1992). It also happens to be "an agreement that the parties desire and expect will be reflected

---

136. The United States retains the right to enforce the terms of this Consent Decree and to take any other action authorized by federal, Commonwealth or local law to achieve or maintain compliance with this Consent Decree.

*See United States v. PRASA,* Civil No. 3:15-cv-2283, Docket No. 10 at pg. 94.

in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees." *Id.; see also Brigido Urbino v. Porto Rico Ry. Light & Power Co.,* 68 F. Supp. 841, 842 (D.P.R. 1946) (acknowledging that a consent decree "is a judicial act involving an exercise of the judicial power."). Here, Plaintiffs have failed to explain how the enforcement of the 2016 Consent Decree—which entails a judicially imposed duty in light of an agreement between the EPA and PRASA—constitutes a non-discretionary duty that falls under the CWA.

Accordingly, because Plaintiffs were unable to bypass the sovereign immunity jurisdictional roadblock—given that they did not plausibly state a claim that the EPA failed to carry out a non-discretionary duty—Defendant EPA's Motion to Dismiss is GRANTED.[21]

---

[21] As Defendant EPA points out in its Motion to Dismiss, *see* Docket No. 18 at pg. 11, it is unclear whether Plaintiffs' state law claims are also directed at Defendant EPA. A reading of the section in the Complaint discussing the state law claims advanced by Plaintiffs appears to only reference PRASA. It is not until the final sentence of that section that

### III. Conclusion

For the reasons set forth above, Defendant PRASA's Motion to Dismiss at Docket Number 11 is **DENIED.** Conversely, Defendant EPA's Motion to Dismiss at Docket Number 18 is **GRANTED.** Plaintiffs' claims against Defendant EPA are **DISMISSED WITH PREJUDICE.**

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 19th day of August, 2021.

<u>S/ SILVIA CARREÑO-COLL</u>
UNITED STATES DISTRICT COURT JUDGE

---

Plaintiffs state that "[t]he illegal sewage spills, resulting from the PRASA's breach and the EPA's omission of its prosecutorial duties, are the cause for the injuries to plaintiff." *See* Docket No. 1 at ¶ 41. Plaintiffs did not address their state law claims in their Opposition to Defendant EPA's Motion to Dismiss. In any event, because the Court has granted Defendant EPA's Motion to Dismiss, Plaintiffs have failed to specify a statutory provision that would waive the EPA's sovereign immunity and being as there remain no federal claims against Defendant EPA, Plaintiffs' state law claims against it—if any—are also dismissed. *See McCloskey v. Mueller*, 446 F.3d 262, 272 (1st Cir. 2006).