UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| NOEL REYES-MUÑOZ, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:19-cv-02131-JAW-HRV |
| | ) | |
| PUERTO RICO AQUEDUCT | ) | |
| & SEWER AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DAUBERT'S MOTION TO EXCLUDE PLAINTIFFS'
ENVIRONMENTAL ENGINEER EXPERT TESTIMONY AND REPORT**

The Court rejects a *Daubert*[1] challenge to the expert testimony of an environmental expert, concluding that the professional engineer has sufficient education, training, and experience to express the proffered expert opinions and that any disagreements about her methodology and the foundation of her expert opinions are properly subject not to exclusion but to cross-examination and the presentation of countervailing expert testimony.

## I.     PROCEDURAL HISTORY

In anticipation of trial, Puerto Rico Aqueduct & Sewer Authority (PRASA) filed a *Daubert* motion to exclude the testimony and report of Plaintiffs' environmental engineer expert, Geannette M. Siberón. *Daubert's Mot. to Exclude Pl's. Env't Eng'r Expert Test. and Report* (ECF No. 233) (*Mot.*). The Plaintiffs oppose the motion. *Pl.'s Resp. to Def.'s Daubert's Mot. to Exclude Pl.'s Env't Eng'r Expert Test. and Report ECF*

---

[1]     *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

*Dkt. No. 233* (ECF No. 270) (*Pls.' Opp'n*).  The Court DISMISSES without prejudice PRASA's motion.

## II.     THE PARTIES' POSITIONS

### A.     PRASA's *Daubert* Motion

PRASA seeks to exclude Ms. Siberón's expert testimony and report under Federal Rule of Evidence 702 on the grounds that her report and testimony are not the product of reliable scientific methodology, fail to apply any recognized environmental engineering standards, and rely heavily on her knowledge and experience, hearsay, and unvalidated observations.  *Mot.* at 1-16.  PRASA argues that Ms. Siberón's methodology does not comply with agency-approved methodology in Clean Water Act (CWA) cases alleging that a "discharge of a pollutant" occurred.  *Id.* at 5.  According to PRASA, any expert analysis in this case must comport with the strictures of the U.S. Environmental Protection Agency's (EPA) regulatory framework under 40 C.F.R. Part 136 and the agency's National Pollutant Discharge Elimination System (NPDES) Inspection Manual.  *Id.* at 5-6.  According to PRASA, the deficiencies in Ms. Siberón's methodology are not a matter of competing expert opinion, but rather a failure to adhere to the minimum investigative procedures required by the EPA and "universally recognized in the wastewater engineering field."  *Id.* at 10-12.  PRASA further maintains that Ms. Siberón gathered no reliable data, performed no recognized engineering or laboratory analysis, failed to rule out alternative causes, did not authenticate the materials she relied upon, and further relied on unsupported inferences about missing documents.  *Id.* at 12-16.  Finally,

PRASA argues Ms. Siberón failed to provide any evidence of ongoing violations by PRASA, which they maintain is required by caselaw.  *Id.* at 16

### B.      Plaintiff's Opposition

In opposing PRASA's motion, Plaintiffs argue that PRASA mischaracterizes both the scope of Ms. Siberón's expert role in their case and the governing standards under Rule 702.  *Pls.' Opp'n* at 1.  Plaintiffs maintain Ms. Siberón deployed reliable methods that comport with accepted environmental engineering practices and further argue that PRASA impermissibly "conflates" the stringent procedures of formal NPDES analysis with Ms. Siberón's much narrower task of determining whether PRASA adhered to their federal consent decree.  *Id.* at 1-2 & 6-9.  Plaintiffs argue that PRASA's motion prematurely argues the weight to be given Ms. Siberón's report and testimony at trial, rather than its admissibility under Rule 702.  *Id.* at 4-6.  Lastly, Plaintiffs argue PRASA misconstrues caselaw that its motion relies on to exclude Ms. Siberón.  *Id.* at 9-11.

### C.      PRASA's Reply

In reply, PRASA maintains that the alleged evidentiary deficiencies in Ms. Siberón's report fail to satisfy Rule 702.  *Reply to Pls.' Opp'n Mot. in Lim. to Exclude Expert Test. of Geannette Siberón* at 1 (ECF No. 289) (*PRASA's Reply*).  PRASA insists that "the same scientific rigor the EPA mandates for regulatory submissions is the same rigor that the profession applies in litigation."  *Id.* at 2.  They assert Ms. Siberón is not qualified to testify as an expert about whether untreated sewage was discharged into navigable waters.  *Id.* at 4-5.  PRASA reiterates its arguments that

Ms. Siberón's analysis is flawed because she gathered no reliable data, performed no recognized engineering or laboratory analysis, failed to rule out alternative causes, did not authenticate the materials she reviewed, and relied on unsupported inferences about missing documents. *Id.* at 5-8. PRASA concludes that Plaintiffs have not met their burden to admit Ms. Siberón's expert report and testimony under Rule 702 and therefore their motion should be granted. *Id.* at 8-10.

## III.    LEGAL STANDARDS

Federal Rule of Evidence 702 provides in full:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> (b)    the testimony is based on sufficient facts or data;

> (c)    the testimony is the product of reliable principles and methods; and

> (d)    the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702.

Rule 702 assigns a gatekeeping role for trial courts to "ensur[e] that proffered expert testimony is more likely than not both 'relevant' and 'reliable.'" *ZipBy USA LLC v. Parzych*, Nos. 24-1494, 24-1500, 24-1586, 2026 U.S. App. LEXIS 8326, at *7 (1st Cir. Mar. 19, 2026) (quoting *Lawes v. CSA Architects & Eng'rs LLP*, 963 F.3d 72, 97 (1st Cir. 2020)); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).

As the First Circuit has explained, a trial court's "gatekeeping function 'is essential because just as jurors may be unable, due to lack of specialized knowledge, to evaluate meaningfully the reliability of scientific and other methods underlying expert opinion, jurors may also lack the specialized knowledge to determine' or to assess 'whether the conclusions of an expert go beyond what the expert's basis and methodology may reliably support.'" *Parzych*, 2026 U.S. App. LEXIS 8326, at \*7 (quoting FED. R. EVID. 702 advisory committee's note to 2023 amendments).

A trial court's "inquiry into the admissibility of expert testimony under Rule 702 'must be solely on principles and methodology, not on the conclusions that they generate.'" *Rodríguez v. Hosp. San Cristobal, Inc.*, 91 F.4th 59, 70 (1st Cir. 2024) (quoting *Daubert*, 509 U.S. at 595). However, a trial court is not required to admit "opinion evidence that is connected to existing data only by the ipse dixit of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *accord United States v. Jackson*, 58 F.4th 541, 550-51 (1st Cir. 2024). Rather, "a court may conclude . . . given the record at hand, 'there is simply too great an analytical gap between the data and the opinion proffered.'" *Hosp. San Cristobal*, 91 F.4th at 70-71 (quoting *Joiner*, 522 U.S. at 146).

That said, "[w]hen the factual underpinning of an expert's opinion is weak, it is a matter affecting the weight and credibility of the testimony" and thus "a question to be resolved by the jury." *Milward v. Acuity Specialty Prods. Grp., Inc.*, 639 F.3d 11, 22 (1st Cir. 2011) (citation omitted). Moreover, neither Rule 702 nor the caselaw interpreting Rule 702 "require[s] that a party who proffers expert testimony carry the

burden of proving to the judge that the expert's assessment of the situation is correct."
*Lawes*, 963 F.3d at 99 (quoting *Milward*, 639 F.3d at 15).

## IV.    DISCUSSION

Applying the proper legal standards to PRASA's *Daubert* motion, the Court will not exclude Ms. Siberón's expert report or testimony. First, the Court is well satisfied that Ms. Siberón has the professional qualifications to express her expert opinions. Ms. Siberón is a graduate of a five-year bachelor's degree program in chemical engineering with a specialty in environmental engineering from the University of Puerto Rico, Mayagüez Campus. *See Cebollero Bertrán v. PRASA*, No. 3:19-cv-1412, *Pl.'s Consolidated Opp'n to Mot. for Summ. J.*, Attach. 1, *Dep. of Ms. Geannette M. Siberón-Gonzalez* at 15 (ECF No. 127). Ms. Siberón is a licensed professional engineer in the Commonwealth of Puerto Rico and is registered as an active member of the Professional College of Engineers & Land Surveyors. *Id.* Ms. Siberón is a Qualified Environmental Professional and a member of the Interamerican Association of Sanitary and Environmental Engineering; she has twenty-eight years of experience performing environmental aspects and impacts assessments, developing CWA compliance programs, sampling, data analysis, and environmental events investigations. *Id.* at 15-16.

Moreover, the Court is satisfied that, for the purposes of Rule 702, her methodology is sufficiently relevant and reliable to support her expert testimony on the issues to which she is expected to testify during trial. Ms. Siberón's role as an expert witness in this case is to provide her opinion, as an environmental engineer, whether PRASA's operational practices, maintenance efforts, and reporting complied

with the consent decree's provisions concerning sanitary sewer overflows (SSOs), areas within her expertise as an environmental engineer.  Ms. Siberón drew her conclusions by applying established environmental engineering principles employed by environmental engineers, auditors, and regulatory inspectors when evaluating field conditions or potential violations, through in-person site inspections, reviewing available documentation, and corroborating witness accounts.  Based on the record before it, the Court does not conclude there is an "analytical gap between the data and the opinion proffered" by Ms. Siberón.  *Joiner*, 522 U.S. at 146.

For the purposes of Rule 702, PRASA's reliance on EPA regulations and the NPDES inspection manual to discredit Ms. Siberón's methodology is misplaced.  40 C.F.R. Part 136 establishes testing procedures for analyzing a specific pollutant when applying for an NPDES permit, self-reporting discharges, or seeking certifications under Section 401 of the CWA.  *See* 40 C.F.R. § 136.1(a)-(c).  Part 136 does not fall within the anticipated scope of Ms. Siberón's expert testimony.  Ms. Siberón is not compiling effluent data for submission to the EPA to obtain a permit or to satisfy regulatory reporting requirements.  Instead, her role involves evaluating PRASA's compliance with the consent decree's SSO provision.

PRASA's reliance on the NPDES inspection manual is similarly unavailing.  The inspection manual describes itself as a "support tool . . . for use by field personnel" but specifically disclaims that it is "intended solely as guidance" and "does not add, eliminate or change any existing regulatory requirements."  U.S. ENV'T PROT.

7

AGENCY, NPDES COMPLIANCE INSPECTION MANUAL ii (Interim Revised Version, Jan. 2017).

Rather, PRASA's various challenges to Ms. Siberón's methodology, including her lack of laboratory analysis, negative inferences drawn from a lack of documentation, and reliance on photographic and video evidence and witness statements, attack the weight and credibility of her testimony that is best left to the jury's assessment. *See Milward*, 639 F.3d at 14; *Carmichael v. Verso Paper, LLC*, 679 F. Supp. 2d 109, 119 (D. Me. 2010) (When the "adequacy of the foundation for the expert testimony is at issue, the law favors vigorous cross-examination over exclusion"). Similarly, whether her credentials and professional experience as an Environmental Professional under 40 C.F.R. § 312.10, which governs disclosure obligations in real estate transaction for sites contaminated by pollution under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601 (35)(B), goes to the weight and credibility the jury may assign to her report and testimony.

Finally, the Supreme Court's holding in *Gwaltney* is irrelevant to the Court's Rule 702 analysis. *Gwaltney* concerned the jurisdictional predicate for citizen suits brought under the CWA, which requires a good-faith allegation of an ongoing violation by the plaintiff. *Gwaltney v. Chesapeake Bay Found.*, 484 U.S. 49, 58-63 (1987) (holding the CWA does not permit citizens suits for wholly past violations). It does not require an expert to provide evidence of an ongoing violation for their testimony to be admissible under Rule 702.

8

In short, the Court concludes that "the expert is qualified to give the opinions [s]he has rendered, that [her] opinions are likely to be helpful to the jury, and that [PRASA's] other objections do not justify exclusion.  Instead, [PRASA] is free to test the expert's qualifications, [her] knowledge of the facts in the case, and [her] opinions at the crucible of cross-examination, by the introduction of contrary evidence, and through careful attention to proper jury instructions." *FERC v. Silkman*, No. 1:16-cv-00205-JAW, 2019 U.S. Dist. LEXIS 208135, at \*1-2 (D. Me. Dec. 2, 2019).

## V.    CONCLUSION

The Court DISMISSES without prejudice Puerto Rico Aqueduct & Sewer Authority's Daubert's Motion to Exclude Plaintiff's Environmental Engineer Expert Testimony and Report (ECF No. 233).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 6th day of April, 2026